UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CURTIS RAY, | : | Civil Case Number |
| *Plaintiff*, | : | |
| | : | 3:17-cv-01081 (VLB) |
| v. | : | |
| | : | March 1, 2018 |
| CITY OF NEW HAVEN, | : | |
| *Defendant.* | : | |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS [DKT. 20]

This action is based on the employment termination of Plaintiff Curtis Ray ("Plaintiff" or "Ray") by the City of New Haven ("Defendant" or "City"). Ray initially filed this case in state court and alleges the City's notice and hearing prior to his termination violated his Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983. The City removed the action to federal court under 28 U.S.C. § 1441(a) as there is valid original jurisdiction as set forth under 28 U.S.C. § 1331. Before the Court is the City's motion to dismiss for failure to state a claim upon which relief may be granted. For the foregoing reasons, the motion is GRANTED.

### I. Background

The following facts are taken from the Complaint and information relied upon by Plaintiff in bringing this suit.[1] They are assumed to be true for the purposes of this motion. Plaintiff Curtis Ray ("Ray" or "Plaintiff") was hired as a

---

[1] Plaintiff submitted the transcripts from the pre-termination hearing held on September 30, 2014, and continued to October 14, 2014. *See* [Dkt. 24-1 (Oct. 14, 2014 Hr'g Tr.); Dkt. 24-2 (Sept. 30, 2014 Hr'g Tr.)]. Plaintiff explained in his opposition that these hearings "were relied upon in bringing this suit." *See* [Dkt. 24 (Opp'n) at 5].

1

police officer by the New Haven Department of Police Service in 2009. [Dkt. 1 (Compl.) ¶ 1]. The City of New Haven ("City" or "Defendant") is a municipality organized under the State of Connecticut and is governed by a charter that establishes the Board of Police Commissioners ("Board"). *Id.* ¶¶ 2-3.

On September 29, 2014, Ray was served with charges of certain departmental violations, and this charge sheet informed him of his termination hearing that would be held the next day. *Id.* ¶ 6a. Specifically, the charges listed are for violations of requirements:

- "not [to] engage in any conduct that would cause to discredit, lower or injure the morale" of the department or any individual in the department, R. 15 art. 5;

- "not [to] consort with hoodlums, criminals or other unsavory characters" unless such actions are required in policy duty, R. 15 art. 19;

- to "report immediately to . . . superior officers any information" regarding a law or ordinance violation "or any matter that should properly come to the attention of the department," R. 15 art. 33;

- not to "commit any act contrary to good order and discipline" including neglect of duty, R. 15 art. 35; and

- not to "engage in any act which would constitute conduct unbecoming an officer," R. 15 art. 38.

*Id.* ¶ 4(a)-(e). The violations stemmed from a telephone conversation between Ray and his barber, Richard Aquino, intercepted by wire on October 20, 2011 at approximately 9:50 PM. *Id.* ¶ 4. During the conversation, Mr. Aquino was informed of an "ATF[2] raid" at his house and Ray responded that "he would have

---

[2] "ATF" likely refers to the Bureau of Alcohol, Tobacco, and Firearms. According to the ATF's website, the ATF focuses on issues involving firearms, explosives, arson, as well as alcohol and tobacco. *See Mission Areas*, ATF, available at https://www.atf.gov/about/mission-areas.

informed him if he had known about the raid." *Id.* Aquino and Ray met in 2006 when they worked at Home Depot and became friends, and subsequently Ray saw Aquino every two to three weeks because Aquino is his barber.[3] *Id.* ¶ 5. The investigation and subsequent charges became public before the investigation was concluded. *Id.* ¶ 6(g).

The hearing was conducted over two days on September 30 and October 14 of 2014. *See id.* ¶¶ 4, 6a; [Dkt. 24-1 at 1:3-16]. The pre-termination hearing commenced the day after Ray received the charge sheet. [Dkt. 1 (Compl.) ¶¶ 4, 6a.] Ray's attorney was given a copy of the charge sheet upon entering the building for the hearing. *Id.* ¶ 6a. The Complaint does not allege from whom Ray's attorney received the charge sheet nor does it allege that Ray was forbidden from providing his attorney a copy of the charge sheet in advance of the hearing. The Board admitted evidence of previous charges against Ray from the State of New Jersey after which Ray was acquitted, the charges were expunged, and the New Jersey allegations did not appear on the charge sheet. *Id.* ¶ 6b. The Board also admitted evidence of a different telephone conversation involving Ray, which did not appear on the charge sheet. *Id.* ¶ 6c. Ray was denied time to prepare responses to the charges not contained in the charge sheet, which were considered by the Board. *Id.* ¶ 6d. During the hearing, Chief of Police Dean Esserman, who was a witness during the hearing, coached another witness, Police Lieutenant Anthony Duffy. *Id.* ¶ 6e. Lieutenant Duffy also testified from notes without providing copies to Ray or his counsel. *Id.* ¶ 6f.

---

[3] Ray disclosed this information during an internal affairs investigation conducted on January 18, 2012. *Id.*

When Ray's counsel cross-examined Chief of Police Esserman, he refused to answer questions. *Id.* ¶ 6i. Ray was also prevented from questioning a witness in comparable circumstances about his treatment by the Board. *Id.* ¶ 6j.

The hearing resumed on October 14, 2014. On behalf of the City, Lieutenant Anthony Duff testified on redirect examination, *see* [Dkt. 24-1 at 1:3-16, 4:2-6:26], and then Chief of Police Esserman testified for which Plaintiff's counsel had the opportunity to cross-examine him, *see id.* at 7:2-15:13. Plaintiff then presented his own evidence in the form of witness testimony from Officer Leonardo Soto, Officer Jeffrey King, Sergeant Betsy Segui, and Lieutenant Jeffrey Hoffman. *See id.* at 16:2-45:1. The City, by and through the Board, terminated Ray's employment by vote at the end of the hearing on the same day. *Id.* ¶ 6. The Complaint does not reference any subsequent grievances, hearings, or administrative remedies related to Ray's employment termination.

II. <u>Legal Standard</u>

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

III.   Analysis

Defendant moves to dismiss on the grounds that Plaintiff was part of a union governed by a collective bargaining agreement ("CBA") and received adequate due process during his post-termination grievance procedure provided under the CBA. [Dkt. 20-1 (Mem. Mot. Dismiss) at 1-3]. According to Defendant, the Connecticut Alliance of City Police, Elm City Local ("Union") filed a grievance on his behalf and the arbitration was held before the Connecticut State Board of

Mediation and Arbitration ("SBMA") on January 6, March 12, and July 14 of 2015. *Id.* On February 22, 2016, the arbitration panel upheld Plaintiff's termination. *Id.* He thereafter filed a complaint with the Commission on Human Rights and Opportunities ("CHRO") on August 17, 2016. *Id.* at 2. Defendant denies any deprivation but contends that any due process violations which may have occurred during the pre-deprivation proceedings were cured by Plaintiff's post-termination arbitration proceeding.

Plaintiff argues he has properly alleged a violation under 42 U.S.C. § 1983 because he has a valid property interest protected by the Fourteenth Amendment[4] and his pre-termination hearing violated his due process rights. [Dkt. 1-1 ¶ 7]. Plaintiff does not dispute the post-termination grievance proceeding happened but rather argues that the post-termination procedure cannot generally "cure" the pre-termination violation. *See* [Dkt. 24 at 7]. Plaintiff also contends *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), would be

---

[4] Earlier in the Complaint, Plaintiff alleges his termination was made "in violation of his rights to Due Process and Equal Protection under the Fifth and Fourteenth Amendments to the United States Constitution. . . ." *See* [Dkt. 1-1 ¶ 6]. Due process claims brought under the Fifth and Fourteenth Amendments are to be conducted as one analysis. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (addressing a deliberate indifference claim under 42 U.S.C. § 1983); *Carter v. Inc. Village of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. 2011) (addressing the plaintiff's violation of property interest without due process under the Fifth and Fourteenth Amendments as one analysis). The Court will reference the Fourteenth Amendment as this case involves state actors and Plaintiff acknowledges his property interest is protected by the Fourteenth Amendment. *See* [Dkt. 1-1 ¶ 7]. The Complaint does not present any facts warranting an equal protection claim and Plaintiff does not indicate he intended to assert such an action in his briefing. The Court will therefore construe the Complaint to be solely that of a procedural due process claim.

6

rendered a "nullity" if a post-termination hearing were allowed to remedy the pre-termination hearing.

The Fourteenth Amendment's Due Process Clause prevents state officials from depriving "any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, sec. 1; *see also Loudermill*, 470 U.S. at 541 ("the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures."). The essential principle of due process requires "notice and opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542. Determining whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment is a two-step process: first, a court must identify the property interest involved; second, it must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation. *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). The parties do not dispute that Plaintiff had a valid property interest for the purposes of this motion. [Dkt. 1-1 ¶ 7; Dkt. 20-1 at 6]. Accordingly, the Court will only address the second element: the process due.

The function of a pre-termination hearing is not to definitively resolve the propriety of the employee's discharge. Rather, it is "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545-46; *see also Faghri v. Univ. of Connecticut*, 621 F.3d 92, 99 (2d Cir. 2010) (same). "The requisite hearing is a

minimal one." *Faghri*, 621 F.3d at 99. Thus, "[t]he pretermination process need not be elaborate or approach the level of a full adversarial evidentiary hearing, but due process does require that before being terminated such an employee [be given] oral or written notice of the charges against h[er], an explanation of the employer's evidence, and an opportunity to present h[er] side of the story." *Otero*, 297 F.3d at 151 (internal quotation marks and citations omitted); *see also Loudermill*, 470 U.S. at 545-46 ("the pretermination hearing, though necessary, need not be elaborate. . . . In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action. . . . The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.") (internal quotation marks and citations omitted). Nor must the hearing, in all cases, be conducted before a neutral decision maker. *Faghri*, 621 F.3d at 99; *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001).

The adequacy of the procedure provided to the plaintiff depends on the "full set of pre- and post-deprivation procedures available." *O'Connor*, 426 F.3d at 197. Specifically, "[w]hen such a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Locurto*, 264 F.3d at 171. This rule stays true to the principles set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976): that due process "is not a technical conception unrelated to time, place and circumstances," and must therefore be "flexible" so as to "call[ ] for such

procedural protections as the particular situation demands." In this case, the Complaint is devoid of any reference to a post-deprivation process—it neither alleges that Plaintiff was provided *nor deprived* a post-deprivation process.

The Court is not persuaded by Plaintiff's suggestion that the pre-deprivation process should be addressed in a vacuum separate from the post-deprivation process in order to effectuate *Loudermill*. It is true that, in implementing *Loudermill*, the Second Circuit has acknowledged that "courts often analyze pre- and post-deprivation hearings separately." *O'Connor*, 426 F.3d at 197. However, the Second Circuit also expressly stated, in the same sentence cited by Plaintiff, that the "*ultimate conclusion* about procedural adequacy under *Mathews* turns on the full set of pre- and post-deprivation procedures available." *Id.* (emphasis added). Thus, while each stage of the process must be evaluated, Plaintiff has cited no authority nor has the Court found any authority suggesting that the due process determination can be made on the basis of the pre-deprivation process alone.

*Mathews v. Eldrige* sets forth factors for a court to consider in evaluating whether procedure satisfied due process, and they are as follows:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. at 335; *Ferrari v. Cty. of Suffolk*, 845 F.3d 46, 65 (2d Cir. 2016) (listing the factors: "(1) the private interest affected; (2) the risk of

erroneous deprivation through the procedures used and the value of other safeguards; and (3) the government's interest"). It is well-established there is a private interest in retaining employment, which carries with it "the severity of depriving a person of the means of livelihood." *See Loudermill*, 470 U.S. at 542-43. But there is also "the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens" coupled with the factor of a "risk of an erroneous termination." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. at 335).

This case raises more than run-of-the-mill employment termination issues and implicates an additional governmental interest: community safety. The City contends that Plaintiff was overheard in a wiretapped telephone call that he would have told Aquino about the issuance of a search warrant had Ray known about it in advance. *See* [Dkt. 1-1 ¶ 4(e)]. Plaintiff told Aquino "he would have informed him if he had known about the raid," *id.*, which suggests such impermissible information sharing was either ongoing or could be expected to start in the future. It is well-established the government has a legitimate regulatory interest in ensuring community safety. *See United States v. Salerno*, 481 U.S. 739, 748 (1987); *Charles W. v. Maul*, 214 F.3d 350, 359 (2d Cir. 2000) (acknowledging in a pretrial criminal confinement case the "legitimate government interest" in "promoting community safety"); *Ferrari v. Cty of Suffolk*, 845 F.3d at 61 (determining a county or municipality may legitimately rely on public safety concerns when retaining a vehicle *pendent lite* based on concerns of the driver's recklessness or intoxication); *Rothenberg v. Daus*, 481 F. App'x

667, 675 (2d Cir. 2012) (stating the timing of a pre-deprivation hearing is "highly relevant" to *Mathews* where "the government's short-term interest in ensuring public safety may justify lesser procedural protections—or even no hearing at all"); *Steven Schneider, P.E. v. Comm'r Chandler, P.E.*, No. 16cv6560(DLC), slip op. at 5 (S.D.N.Y. Feb. 7, 2018) ("One important government interest, for instance, is promoting public safety.").

Consideration of only the pre-termination proceeding in this case militates in favor of dismissal. Both the Supreme Court and the Second Circuit have found that a pre-termination hearing was not required by the due process clause where the individual's continued employment posed a risk to the safety and welfare of the community and adequate post-deprivation due process was afforded. In *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011), the Second Circuit weighed the three *Matthews* factors and upheld the district court's dismissal of a case challenging the summary suspension of taxi drivers arrested on felony charges to assure public trust and safety. In that case, the Second Circuit pointed out that the risk of erroneous deprivation could be mitigated by the availability of a prompt post-deprivation hearing. In reaching its decision, the Second Circuit relied on the Supreme Court's decision in *Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (citing *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 243 (1988); *Loudermill*, 470 U.S. at 543). In *Gilbert*, a police officer challenged the constitutionality of his suspension without pay and without notice or a hearing after he was arrested on felony drug charges. *Gilbert*, 520 U.S. at 926-27. The Supreme Court, citing *Mathews,* counseled that due process does not require a pre-termination hearing

in all instances and concluded that because police officers "occupy positions of great public trust and high public visibility," the risk to public, safety, and the public interest in fostering public confidence in law enforcement outweighed the interest of a police officer charged with felony drug offense to a pre-termination hearing. *Id*. at 932. In both cases, there was a post-termination due process proceeding and its sufficiency was critical to the determination of whether the due process requirements were ultimately satisfied. See *Mathews*, 424 U.S. at 335.

The facts of this case raise the same safety and public confidence issues determinative in *Nnebe* and *Gilbert*. The whole purpose of conducting police investigations and ATF raids is to protect the community from violence and other societal harms. Warning the target of a police raid of an impending execution of a court-issued search warrant undermines public safety and that of law enforcement officers executing the warrant, and it erodes public confidence in both law enforcement and the justice system. Further, it interferes with a court order entered in furtherance of an ongoing investigation, which constitutes obstruction of justice, a serious felony offense under federal law. 18 U.S.C. §1509.

Plaintiff received notice of the charges against him the day before his first hearing held September 30, 2014. [Dkt. 1-1 ¶ 6]. Plaintiff also alleges his attorney did not receive the charges until the day of the hearing, but he does not allege any facts explaining why or showing that the timing was prejudicial. His employment was not terminated until two weeks later on October 14, 2014, the

second and final day of the evidentiary pre-termination hearing. *See id.*; [Dkt. 24-1]. Thus, Plaintiff received notice before his first hearing and had two full weeks to prepare prior to his second hearing. The record in this case militates in favor of dismissal were the court able to consider the pre-termination proceedings alone. However, as stated in *Nnebe* and *Gilbert*, the Court cannot reach an *ultimate conclusion* without consideration of the post-termination due process afforded Plaintiff. *See O'Connor*, 426 F.3d at 197. Therefore, the allegations of the Complaint fail to state a claim upon which relief may be granted, because it makes no allegation that there was no post-deprivation proceeding and the record indicates there was.

The Court assumes Plaintiff challenges the sufficiency of his post-deprivation proceeding as it relates to his pre-termination hearing. Defendant posited in the motion to dismiss that the post-termination grievance process remedied any pre-termination violations to the extent they existed (which Defendant disputes). *See* [Dkt. 20-1]. In response, Plaintiff argued that the Court may not refer to any evidence not referenced in or attached to the Complaint. *See* [Dkt. 24 at 4-5]. The Court finds Plaintiff's argument troubling given the Complaint does not mention any post-deprivation due process. Indeed, Plaintiff's argument is based on a loophole of sorts: if a plaintiff were to be able to satisfy the Rule 8 pleading standard purely by setting forth allegations to *half* of the pre- and post- deprivation procedure, he would be incentivized to only raise the facts beneficial to him. Any obfuscation undermines the need for efficiency of the courts, as the bigger picture would undoubtedly come to fruition during

13

discovery and over the course of litigation. *See* Fed. R. Civ. P. 1 (requiring the federal rules to be "construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding.") (emphasis added); Fed. R. Civ. P. 8(a) (requiring the plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief"). Indeed, Rule 11(b) of the Federal Rules of Civil Procedure provides,

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Violations of these provisions may constitute sanctionable offenses. *See* Fed. R. Civ. P. 11(c).

Plaintiff requests leave to amend in the event the Court finds the Complaint fails to satisfy Rule 8 of the Federal Rules of Civil Procedure. *See* [Dkt. 24 at 10]. The Federal Rules of Civil Procedure provide that "a party may amend its

14

pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend is not appropriate where the moving party acted with "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed," or the amendment would create undue prejudice to the opposing party or be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir.2003). A court should deny leave to amend for futility when the proposed amended complaint would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *Echeverria v. Utitec, Inc.*, No. 3:15-cv-1840 (VLB), slip op. at 3 (D. Conn. Mar. 17, 2017).

IV. <u>Conclusion</u>

For the aforementioned reasons, the Court hereby DISMISSES this case without prejudice. Plaintiff may move to reopen the case, together with an amended complaint. Before filing an amended complaint Plaintiff must conduct thorough due diligence of his pre- and post-termination due process proceedings and then consider whether an amended complaint would satisfy the aforesaid standards or be futile under applicable law. Any motion to reopen must be filed within 21 days of the date of the order. Should Plaintiff file an amended complaint, which fails to satisfy the applicable legal standards, the case will be dismissed with prejudice. *Foman*, 371 U.S. at 182; *Ellis*, 336 F.3d at 127.

**IT IS SO ORDERED.**

_____/s/_____
**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: March 1, 2018**